Modified.

## In re McPHERSON.
### Patent Appeal No. 3061.

Court of Customs and Patent Appeals.
April 24, 1933.

Carl T. Mack, of Washington, D. C. (Boyce A. Ruess, of Washington, D. C., and J. H. Weatherford, of Memphis, Tenn., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This appeal involves a number of claims which appeared in appellant's application, serial No. 243,234, filed in the United States Patent Office December 29, 1927, for patent on "improvements in cowl ventilators." It appears that some twenty-four of the claims of the application stand allowed, but those here involved were rejected by the examiner for want of invention in view of the prior art. The decision of the examiner was affirmed by the Board of Appeals, and from the latter decision appeal was taken to this court.

There are certain incidental questions which require preliminary determination.

First. A few days prior to the date upon which the cause came on for hearing before this court, appellant filed a motion which was formally presented upon the day the case was argued, saying that appellant, by his attorney, "moves and requests that the final hearing * * * be indefinitely postponed; and that the application which constitutes the subject-matter of said appeal be remanded to the Primary Examiner."

Sixteen reasons or arguments were set forth in support of the motion and request, the first of them opening with the statement: "That, subsequent to the perfection of said appeal, the Patent Office, on December 19, 1932, declared a three-party interference, No. 64,678, involving appellant's application now under appeal, and Letters Patent issued to one Townend, No. 1,813,645, and an application of Robert G. Breene et als."

Substantially all the other "reasons" comprise arguments based upon the fact of the declaring of the said interference; the papers, reciting the action leading up to and including its declaration, being filed as a collective exhibit to the motion. These arguments need not be recited in detail. In substance, it is insisted that the declaration of interference indicates a change of opinion on the part of the examiner as to the proper construction of appellant's appealed claims and that, under what appellant reasons must now be the examiner's construction, they are patentable.

An examination of the exhibit referred to discloses that the application here upon appeal is involved in the interference declared, jurisdiction of same having been, on November 4, 1932, allowed the examiner by the Commissioner of Patents, "for the purpose of adding to it an interference now pending." The request of the examiner states: "The subject matter involved in the proposed interference will in no way conflict, or disturb the subject matter or question involved in the appeal."

While, however, the *application* is in the status described, no one of the *claims* before us on appeal is in the interference, nor, so far as we can determine, is any one of the twenty-four claims which stand allowed so involved. The interference was declared upon request of appellant upon two claims which he copied from the Townend patent, consideration being refused by the examiner to other submitted claims, "as this case is closed for general prosecution before this office." Some of these claims so refused consideration appear to be quite similar to certain of the claims which stand allowed to appellant, but no close scrutiny of them appears to be here necessary since they are in no way involved.

Nothing indicating any change of opinion upon the examiner's part appears from the record, and there is no acquiescence by the Solicitor for the Patent Office in the correctness of appellant's deductions as to the construction which the examiner would now give the claims.

Under this state of facts the court must deny appellant's motion and request (taken under advisement at the hearing) that the final hearing be indefinitely postponed and the application remanded to the primary Examiner.

Whether we have any authority to make an order so remanding the application is a question concerning which no opinion is here expressed. Assuming, without holding, the authority to exist, there is no state of facts here which justifies its exercise.

The second preliminary matter relates to a claim numbered 43. It was one of those disallowed by the examiner and hence was included in the affirmation of his decision by the Board of Appeals.

Appellant sought a rehearing from the board and in his petition stated: "Claims 34, 43, 44, 46, 47 and 48 are withdrawn."

In the opinion of the board denying re-

consideration there is no reference to the withdrawal.

In taking the appeal to this court, appellant stated: "Claims 34, 44, 46, 47 and 48 are withdrawn."

Claim 43 is printed in the record as one of the rejected claims, in accordance with paragraph 3 of rule 26 of this court, and is included as one in the brief of the Solicitor for the Patent Office who makes no objection to its consideration by us.

In view of the foregoing facts we feel constrained to hold that the withdrawal of claim 43 was inadvertently made and that it is properly before us for consideration.

Turning now to the merits of the case, we quote claims 39 and 45 as illustrative:

"39. In an air plane, having radial engine cylinders, a nose, a cowl forming a continuation thereof, extending rearwardly therefrom to said cylinders and thence outwardly and rearwardly to a stream line junction with the fuselage of said plane, said cylinders projecting through said cowl; and an auxiliary cowl surrounding said cylinders and annularly spaced at its front and rear ends from said inner cowl."

"45. In an airplane powered by an engine having cylinders with cooling fins thereon; cooling means including a nose, an inner cowl, around said engine, forming a rearward continuation of said nose, and an outer cowl open at both ends, surrounding and spaced from said inner cowl to provide a passageway for cooling air therebetween, the cylinders of said engine projecting outward through said inner cowl into the air passageway between said cowls, whereby air may be smoothly diverted past said cylinders to cool them."

The references cited are:

Magni, 1,611,658, December 21, 1926.

(French) Deperdussin, 470,093, June 8, 1914.

(French) Lenoir et al., 599,469, October 20, 1925.

Jane's All the World's Aircraft, 1924 Edition, pp. 98b, 248b.

Appellant's brief gives a quite satisfactory nontechnical description of his disclosure as follows: "Appellant's application discloses a structure for cooling the cylinders on an airplane. It comprises an inner cowl which extends from the airplane body forwardly to the propeller and through which the engine cylinders project. An outer cowl is concentric with and spaced from the inner cowl and forms therewith a passage for air. The air serves to cool the engine cylinders. In other words, the cylinders are arranged in an air passage. This passage guides air around the cylinders to cool them; the passage being formed by an inner cowl which is merged into the fuselage and by an outer cowl which is adjusted to vary the amount of air which flows around the cylinders and regulates the cooling effect. By means of the double cowling, a smooth passageway is established in which the cooling of the cylinders is accomplished and a minimum resistance to air flow is set up."

Appellant's brief further states: "Applicant believes that he is the first to recognize the enormous advantages arising from the use of two cowlings around a radial engine in an airplane. The inner of these cowlings he uses to smooth up the flow around the engine crank case and immediately adjacent parts, and to direct the air flow against the outer ends and heads of the cylinders; and the outer cowl to surround these cylinders and prevent the turbulence set up by the cylinders from being communicated to the main body of air passing the structure."

It is apparent to us that no one of the references discloses a structure which in itself bears much resemblance to the specific portion of appellant's structure that is at issue here. There is no indication in the specifications of Deperdussin and Lenoir that either of them was seeking an air cooling arrangement for their engines.

In the case of In re Dann, 47 F.(2d) 356, 357, 18 C. C. P. A. 1031, 1034, we said: "Foreign patents may not be measured as anticipatory by what may be made out of them, but only by what is clearly and definitely expressed in them. In re Gillam, 37 F.(2d) 959, 17 C. C. P. A. 877."

Lenoir does not teach the use of a cowl, and the stream-line effect shown in a part of his structure is not a controlling feature in appellant's application, as we view the case.

Deperdussin shows a cowling surrounding the engine whose cylinders project therethrough, and over the upper set of cylinders there is a shield which the examiner apparently regarded as an outer cowling, or the equivalent of one. The other cylinders have no such shield. This shield was obviously not intended to perform the function of a cowl—certainly no such function as is intended by appellant's outer cowl. Studying it in its arrangement in the drawing (the

translation of the Deperdussin specification makes no reference to it), we do not feel that it can perform the same function with reference to the smooth passage of air over the cylinders and through the outlet which appellant's arrangement performs. It is noted that the decision of the Board of Appeals makes no reference to Deperdussin.

The Jane publication is declared to be cited only to show that it is not uncommon for engine cylinders to project through cowlings.

The principal reference, Magni, shows an outer casing or cowl into which air enters through a hole designed, apparently, for that purpose. The nose of the fuselage, which is within the casing, is of a shape which causes the formation of an annular passage between it and the cowl through which hole the air is passed over the cylinders and out through outlet apertures. In effect, in Magni, the engine itself is the part which takes the place of appellant's inner cowl in forming at least a major portion of the passage through which the air flows for cooling the cylinders. The record indicates that by reason of the irregular contour of the Magni engine, there is much greater drag in Magni's air passage than in that of appellant's with its streamlined inner cowl.

There is no questioning here of the fact that appellant has made an improvement of importance in the art to which his device belongs, nor can it be seriously questioned, we think, that he has obtained a result in this art better than any obtained by the references cited. It is not possible to combine the features of the references and thereby produce the result which appellant obtains without very materially modifying those features. Indeed, the idea of the double cowl for air cooling purposes is not expressed or disclosed in them, nor is it, we think, present in them, or in any unmodified combination of them. What appellant did may seem simple enough after it is done, but no one else did it.

In view of these facts, we feel constrained to differ with the tribunals of the Patent Office upon the question of patentability and to hold that there is, at least, a doubt which should be resolved in appellant's favor. Vide In re Dann, supra, and In re Symonds, 47 F.(2d) 972, 18 C. C. P. A. 1128, with their included citations.

The decision of the Board of Appeals is reversed as to the claims here involved.

Reversed.